## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| Fondia K. Withrow, | : | Case No. 3:18-cv-337 |
| | : | |
| Plaintiff, | : | District Judge Walter H. Rice |
| | : | Magistrate Judge Sharon L. Ovington |
| vs. | : | |
| | : | |
| Commissioner Of The Social Security | : | |
| Administration, | : | |
| | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATIONS[1]

### I.    Introduction

Plaintiff Fondia K. Withrow brings this case challenging the Social Security Administration's denial of her applications for Disability Insurance Income and Supplemental Security Income.  The denial mainly occurred in the decision of Administrative Law Judge (ALJ) Deborah F. Sanders, who concluded that Plaintiff was not under a benefits-qualifying disability.

Plaintiff seeks a remand of this case for payment of benefits or, at a minimum, for further proceedings.  The Commissioner asks the Court to affirm ALJ Sanders's decision.

### II.    Background

Plaintiff asserts that she has been under a disability beginning on February 23, 2015.  She was age 54 on that date and is therefore an individual "closely approaching

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

advanced age" under Social Security Regulations.   20 C.F.R. §§ 404.1563, 416.963(d)).[1]
Plaintiff has a high school education and past relevant work as a copy machine operator
and sewing machine operator.  Her additional former jobs include on-call nurse, office
manager, image processor, customer service representative, assistant manager of a retail
store, HWAP (Home Weatherization Assistance Program) specialist, and chart processor.
(Doc. #6, *PageID* #350).

## A.    Plaintiff's Testimony

During an administrative hearing ALJ Sanders held, Plaintiff testified that she
could not work a full-time job due to (1) her need to see the doctor at least twice weekly;
(2) "horrible migraines"; (3) bodily pain and difficulty sitting continuously at a computer
accompanied by difficulty concentrating; and (4) constant tiredness, difficulty
remembering, and pain from fibromyalgia.  *Id.* at 109.  She described her fibromyalgia
pain as "you feel like you're just one giant bruise.  You don't want to be touched.  It just
hurts."  *Id.* at 110.  She testified to experiencing 3 to 4 fibromyalgia flare-ups per year.
*Id.* at 109.  Falling down will trigger these as well as "largely emotional situation[s],"
such as a funeral, surgery, dental appointments, and migraines.  *Id.* at 110.

Plaintiff suffers 2 or 3 migraine headaches a week.  *Id.*   Medication "doesn't
quite" control her migraines.  *Id.* at 111.  Her doctor informed her that stress causes her
migraines.  Her constant daily pain alone can be serious enough to "stress [her] out
completely."  *Id.*  She testified that "once every couple of months" she experiences a

---

[1] The remaining citations to the Social Security Administration's Regulations will identify the pertinent
Disability Insurance Benefits Regulation with full knowledge of the corresponding Supplemental Security
Income Regulations.

migraine that sends her to the emergency room. *Id.* She also has cluster migraines during which her migraine pain lasts 3 or 4 days.

Plaintiff further testified that she has neck pain that moves down into her shoulders once every 2 months. *Id*. at 129. She is not able to turn her head to the side very well. She has learned to live with daily neck pain. *Id*. at 128. She also has neuropathy. When her hands start to get cold in wintertime, "they will feel like they're on fire. If they stay cold for any amount of time, I can't really use them…." *Id*. at 127. She loves to swim during the summer, but when she gets into the pool, she has pins-and-needles feelings in her feet and hands. *Id*.

Plaintiff also told the ALJ about her memory problems, stating, "I can't remember crap." *Id*. at 112. She needs to have things written down. *Id*. at 114. This caused her to experience job-performance problems at her last job. *Id*. at 134. Plaintiff testified that she was seeing a counselor once every other week for PTSD, anxiety, and depression. *Id.* at 119, 130. She endured abuse as a child. *Id.* at 131-32. PTSD emerges when she hears loud noises. She testified that the Fourth of July is "a horrible thing …." *Id*. at 130. Her PTSD symptoms also emerge when she hears people arguing. She explained, "I get really tense, stressed, and then I'll either get away from it or I will blow up." *Id*. at 130-31. She has minor panic attacks about 3 times a week and a major panic attack once a month. When anxiety hits her and causes a panic attack, the anxiety "takes over" and she can't talk or do anything. *Id*. at 132.

Plaintiff sees her primary-care physician Polina Sadikov, M.D. about 3 times a month because she frequently "catch[es] everything that comes down the pike." *Id*. at

118.  Plaintiff thinks her immune system never recovered from a bone-marrow transplant that she'd previously had to treat cancer  *Id.*

Plaintiff told the ALJ that her back is a "mess."  *Id.* at 112.  If she sits in the same position for too long, her back gets "really sore."  *Id.* at 112.  She estimated she could sit no longer than about 2 hours.  *Id.*

Plaintiff also has Chronic Obstructive Pulmonary Disease.  She treats it with an inhaler and other prescribed medication.  *Id.* at 113.

Plaintiff does not recall what medications she takes, but she acknowledged they cause her no side effects.  *Id.* at 118-19.

Regarding her daily activities, Plaintiff testified that she gets up at 8:00 a.m. and drinks some coffee.  She then sits and watches television.  She stands and walks to the kitchen to get coffee or to exercise her ankles.  She spends most of her day sitting and watching television.  *Id*. at 120.  She crochets for no longer than 30 minutes.  She pays her bills using her phone.  She is not really able to do household chores due to back pain. She does not go shopping except for grocery shopping once a month with help from one of her sons.  He does the heavy lifting and helps her remember what she needs to buy. She tries to go to church every Sunday but only goes every other Sunday.  She has difficulty sitting through an entire church service, so she stands and walks to the waiting area where she can watch the service on television.  *Id*. at 122-23.

**B.    Medical Opinions**

<u>**Dr. Sadikov**</u>

Records from Plaintiff's primary-care physician, Dr. Sadikov, indicate that in

February 2015, Plaintiff reported having memory and concentration problems to the extent she could not learn new things at work.  *Id.* at 526.  She also reported chronic problems with headaches, neck and back pain, arthralgias, depression, and anxiety.  Dr. Sadikov believed Plaintiff's memory problems could be related to her medications and discontinued prescribing Neurontin and Flexeril, and started her on Lyrica.  *Id.*

In May 2015, Plaintiff told Dr. Sadikov about new pain in her neck and arm.  *Id.* at 710.  Dr. Sadikov's examination showed that Plaintiff's neck was supple and exhibited normal range of motion.  She found Plaintiff's left trapezius to be tender with muscle spasms.  *Id.*

In June 2015, Plaintiff saw Dr. Sadikov for an inversion injury to her right ankle.  *Id.* at 711.  Dr. Sadikov examined Plaintiff and diagnosed her with an ankle sprain.  *Id.*

In July 2015, Plaintiff told Dr. Sadikov that she had daily neck pain and was depressed and stressed.  *Id.* at 712.  Dr. Sadikov described Plaintiff's mood as tearful and depressed.  *Id.* at 715.  She diagnosed Plaintiff with depression.  *Id*. at 716.

In late July 2015, Dr. Sadikov completed a Residual Functional Capacity Questionnaire in which she reported that Plaintiff had been her patient for 20 years.  Dr. Sadikov listed Plaintiff's diagnoses as fibromyalgia, depression, and chronic pain.  *Id.* at 617.  Her symptoms included chronic daily back pain, neck pain, and pain in her lower extremities, and chronic headaches.  Her daily pain worsened with stress and exertion.  *Id*.  Dr. Sadikov also identified Plaintiff's clinical findings and objective signs as joint tenderness, swelling, depressed mood, and chronic fatigue.  *Id.*  Dr. Sadikov further noted that Plaintiff's numerous medications can cause sleepiness and dizziness.  *Id*.  She

believed that Plaintiff was not a malingerer.  *Id.* at 618.

Dr. Sadikov opined that Plaintiff's symptoms would frequently interfere with the attention and concentration she needed to perform even simple tasks, and she would need a low-stress job.  *Id.*  Dr. Sadikov opined that Plaintiff could stand/walk less than 2 hours and sit for about 2 hours in an 8-hour workday.  *Id.* at 619.  Plaintiff would need a job that allowed her to shift positions at will, and she would need to elevate her legs.  *Id.* According to Dr. Sadikov, Plaintiff could rarely lift and carry 10 pounds and occasionally lift and carry less than 10 pounds.  *Id.* at 619.  Dr. Sadikov concluded that Plaintiff would need to take unscheduled breaks during the workday and would be absent from work more than 4 days per month as a result of her impairments or treatment.  *Id.* at 619-20.

### Joan E. Simpson, Psy.D.

Joan E. Simpson, Psy.D. evaluated Plaintiff in May 2015 for the Ohio Division of Disability Determinations.  *Id.* at 610-15.  Dr. Simpson observed Plaintiff to be anxious "as demonstrated by nervous laughter."  *Id*. at 613.  Plaintiff "did not appear to exaggerate or minimize her difficulties."  *Id*.  She displayed fidgetiness and cried when discussing her work difficulties.  She spoke softly and maintained variable eye contact with Dr. Simpson.  Dr. Simpson indicated that Plaintiff displayed "no difficulty following conversationally or responding to direct questions."  *Id*.  She calculated 2 iterations of serial 7s (counting down from 100 by 7s in 30 seconds) with 1 error.  She was asked to perform serial 3s and did so correctly in 11 seconds.  She showed no indication of easy distractibility and did not ask Dr. Simpson to repeat her questions.  *Id*.

Dr. Simpson diagnosed Plaintiff with major depressive disorder and anxiety

disorder.  *Id.* at 614.  According to Dr. Simpson, Plaintiff's prognosis was fair.  She opined that Plaintiff maintained a "low-level capacity" for maintaining attention, concentration, persistence, and pace to perform both simple and multi-step tasks.  *Id.* at 615.  Plaintiff did not lack the capacity to respond appropriately to supervision and coworkers.  Dr. Simpson also thought that Plaintiff lacked the capacity to respond appropriately to work pressures.  *Id.*

### Mujeeb Ranginwala, M.D.

Plaintiff began seeing rheumatologist Dr. Ranginwala in August 2015 for pain in her neck, back, arms, and legs.  *Id.* at 755-57.  Upon examination, Dr. Ranginwala found tender points in the areas of Plaintiff's trapezius, suboccipital, upper back, lower back, and lateral epicondyle.  He recognized that Plaintiff had pain in her neck, back, arms, and legs.  *Id.* at 756.  He diagnosed Plaintiff with myalgia, noting differential diagnoses of fibromyalgia, polymyositis, and polymyalgia rheumatica.  *Id.* at 757.

In September 2015, Dr. Ranginwala added fibromyalgia to Plaintiff's list of diagnoses from myalgia to fibromyalgia after a physical exam revealed positive tender points in her trapezii, suboccipital, upper back, lower back, and lateral epicondyle.  *Id.* at 753-54.  Dr. Ranginwala prescribed Neurontin for Plaintiff's fibromyalgia and recommended Tylenol for lumbar discomfort.  *Id.* at 734-51.

### Michael Verdon, D.O.

Plaintiff consulted Dr. Verdon, a neurosurgeon, on one occasion (February 1, 2017) due to her headaches, neck, and shoulder pain.  *Id.* at 1350.  Examination revealed that Plaintiff had full strength and tone in all muscle groups and normal gait, reflexes,

sensation, and cerebellar function.  *Id*. at 1350-51.  She also exhibited normal range of motion in her cervical, thoracic, and lumbar spine.  *Id.* at 1354-55.  Upon forward bending, Plaintiff had "trivial trigger points in the upper trapezius and scalenes on the right greater than the left."  *Id*. at 1355.

Dr. Verdon further reported that Plaintiff tested negative for shopping-cart sign and Waddell's signs.  *Id.*  He found many "special tests" to be "NA"—presumably, not applicable—and therefore did not perform them.  *Id.*  As a momentary aside, the ALJ misread or misunderstood this part of Dr. Verdon's report.  The ALJ failed to recognize that Dr. Verdon referred to these tests as "NA," and the ALJ incorrectly thought that Plaintiff had "negative [results] in bilateral SLR and other special tests (Tinel, Drop Arm/Empty Can, Fortin Finger, Patrick's Test, Hoover …)."  *See id*. at 69, 1355.  More on this later.

Dr. Verdon reviewed a cervical spine MRI taken in December 2016 that revealed Plaintiff had "multiple level cervical spondylosis with moderate central canal stenosis at …" C4-5 and C5- 6.  *Id.* at 1356.  Dr. Verdon assessed cervical spondylosis without myelopathy; myofascial pain syndrome, cervical; depression; and "intractable migraine with aura with status migrainosus."  *Id.*  He recommended physical therapy, noting there was no need for surgical intervention at that time.

### Matthew Kelzer, PA-C

In May 2017, Mr. Kelzer wrote a short letter explaining that Plaintiff had been under his care "for mental health" since November 2015.  *Id*. at 1358.  Mr. Kelzer diagnosed Plaintiff with major depressive disorder and PTSD.   Mr. Kelzer also noted

8

Plaintiff's history of "several physical health concerns, including, but not limited to, multiple repairs of ankle and Fibromyalgia." *Id.* at 1358. Plaintiff's mental health had only been partially responsive to treatment even though she was compliant with treatment and "attends her appointments faithfully." *Id.*

Mr. Kelzer opined, "At this time I feel that she is unable to rejoin the workforce for the foreseeable future, and that doing so would risk causing her condition to further deteriorate." *Id.*

### Record Reviewers

Anton Freihofner, M.D. reviewed Plaintiff's medical records in May 2015. *Id.* at 193-94. He thought Dr. Simpson's opinions deserved no weight. He described Dr. Simpson's report as "vague," and he recognized that although Dr. Simpson found Plaintiff lacked capacity in certain areas, Dr. Simpson "does not describe the degree of limitations. In other areas (U/R/F instructions[2]), there is no opinion provided, but rather restatement of facts (exam and claimant's statements)." *Id.* at 193 (footnote added). Dr. Freihofner described Plaintiff as "fully" and "largely" credible. *Id.*

Esberdado Villanueva, M.D. reviewed Plaintiff's records in September 2015 and agreed with Dr. Friehofner's evaluation of Dr. Simpson's report. *Id.* at 209-10.

In June 2015, psychologist Leslie Rudy, Ph.D. reviewed Plaintiff's medical records. *Id.* at 176. She opined that Plaintiff had a mild restriction of activities of daily living; mild difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation of

---

[2] Understanding/Remembering/Following instructions.

extended duration. *Id.* Dr. Rudy found Plaintiff's statements about her symptoms "fully credible," noting the medical evidence shows she has chronic anxiety and depression that caused her difficulties with maintaining attention and concentration. *Id.* at 177.

Dr. Rudy also thought that Plaintiff can "maintain concentration on any single task for longer than 15 mins at a time (while remaining free to perform other tasks thereafter)." *Id.* at 194. Dr. Rudy adopted the same assessment of Plaintiff's mental residual functional capacity (MRFC) that existed in August 2003.[3] Dr. Rudy noted, "The MRFC is being adopted under AR 98-4 *Drummond* Ruling." *Id.* at 178.

Paul Tangeman, Ph.D., reviewed Plaintiff's records in September 2015 and confirmed Dr. Rudy's assessment. Dr. Tangeman added that there has been "no worsening or new impairments alleged," and there was no psychiatric treatment. *Id.* at 207-10.

## III. "Disability" and The ALJ's Decision

To be eligible for Disability Insurance Benefits or Supplemental Security Income a claimant must be under a "disability" as defined by the Social Security Act. *See* 42 U.S.C. §§ 423(a), (d), 1382c(a). The definition of the term "disability" is essentially the same for both programs. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful

---

[3] An ALJ previously granted, in part, Plaintiff's February 1999 application for Supplemental Security Income for a limited period of time (February 9, 1999 until April 30, 2000). *Id*. at 151-67.

activity" that is available in the regional or national economies.  *See id.* at 469-70.

As noted previously, it fell to ALJ Sanders to evaluate the evidence.  She did so by conducting the 5-step sequential evaluation mandated by Social Security regulations.  *See* 20 C.F.R. § 404.1520(a)(4).  Her significant findings for present purposes began at step 2, where she found that Plaintiff had many severe impairments, including, for example, degenerative disc disease of the cervical and thoracic spine, chronic kidney disease, migraine headaches, fibromyalgia, major depressive disorder, and anxiety disorder. (Doc. #6, *PageID* #60).  She next found, at step 3, that Plaintiff was not decisively eligible for benefits.  *Id*. at 61-66.

At step 4, ALJ Sanders found that Plaintiff had the residual functional capacity to perform light work with many limitations—for example, lifting and carrying up to 20 pounds occasionally and 10 pounds frequently; standing and/or walking for 6 hours in an 8-hour workday; no operating a motor vehicle; avoiding concentrated exposure to excessive noise, no higher than level 3; and performing simple 1-2 step tasks.  *Id*. at 66. The ALJ further found that Plaintiff "may be off task up to 5% daily."  *Id*.

With these limitations in mind, the ALJ found that Plaintiff remained able to perform her past relevant work.  This meant that she was not under a benefits-qualifying disability.  This ended the ALJ's sequential evaluation at step 4.  *Id*. at 79-80.  She made no determination about the existence of other jobs in the national economy that Plaintiff could perform.

## IV.    Judicial Review

The Social Security Administration's denial of Plaintiff's applications for

benefits—embodied in ALJ Sanders' decision—is subject to judicial review along two lines: whether she applied the correct legal standards and whether substantial evidence supports her findings. *Blakley v. Comm'r of Social Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *see Bowen v. Comm'r of Social Sec.*, 478 F3d 742, 745-46 (6th Cir. 2007). Reviewing the ALJ's legal criteria for correctness may result in reversal even if the record contains substantial evidence supporting her factual findings. *Rabbers v. Comm'r of Social Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F3d at 746.

The substantial-evidence review does not ask whether the Court agrees or disagrees with the ALJ's factual findings or whether the administrative record contains evidence contrary to those factual findings. *Rogers v. Comm'r of Social Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *see Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). Instead, substantial evidence supports the ALJ's factual findings when a "'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 406 (quoting *Warner v. Comm'r of Social Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance..." *Rogers*, 486 F.3d at 241.

## V. Discussion

Plaintiff argues that the ALJ reversibly erred by rejecting essentially every material medical source opinion of record and substituting her own lay interpretation of the medical evidence for that of the treating, examining, and non-examining medical professionals. Plaintiff challenges the ALJ's finding that the opinions from Dr. Sadikov, Dr. Simpson, and Mr. Kelzer are based merely upon her subjective complaints. This is a

problem, Plaintiff argues, because the state-agency medical sources found Plaintiff largely credible.

The Commissioner maintains that the ALJ reasonably determined Plaintiff had a residual functional capacity for limited-light work based on substantial evidence. The Commissioner argues that the ALJ provided good reasons for assigning little weight to Dr. Sadikov's opinions and reasonably weighed the opinions of Dr. Simpson and Mr. Kelzer.

Social Security Regulations require ALJs to adhere to certain standards when weighing medical opinions. "Key among these is that greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians, commonly known as the treating physician rule." *Rogers*, 486 F.3d at 242 (citations omitted). The rule is straightforward:

> Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record."

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting in part 20 C.F.R. § 404.1527(c)(2)); *see Gentry*, 741 F.3d 708, 723 (6th Cir. 2014).

If the treating physician's opinion is not controlling, much remains for the ALJ to consider:

> When the treating physician's opinion is not controlling, the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors. However, in all cases there remains a

13

> presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference, its non-controlling status notwithstanding. Soc. Sec. Rul. 96–2p, 1996 WL 374188, at *4 ("In many cases, a treating physician's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.").

*Rogers*, 486 F.3d at 242 (citing *Wilson*, 378 F.3d at 544).

The Regulations require ALJs to provide "good reasons" for the weight placed upon a treating source's opinions. *Wilson*, 378 F.3d at 544. This mandatory requirement is satisfied when the ALJ provides "specific reasons for the weight placed on a treating source's medical opinions." *Id.* (quoting Soc. Sec. R. 96-2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)).[4] The goal is to make clear to any subsequent reviewer the weight given and the reasons for that weight. *Id.* Substantial evidence must support the ALJ's reasons and "a failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243.

ALJ Sanders placed little weight on Dr. Sadikov's opinions, characterizing them as "extreme opinions … unsupported by her treatment notes and those of other providers at the time of her opinion [in July 2015]…." (Doc. #6, *PageID* #75). The ALJ observed that Dr. Sadikov's opinions are "not based on objective findings but instead rel[y] heavily

---

[4] Soc. Sec. Ruling 96-2p has been rescinded, but the new rules and regulations do not apply to applications—like Plaintiff's—filed before March 17, 2017. *See* 82 FR 15263-01, 2017 WL 1105348; 82 FR 5844-01, 2017 WL 168819.

on the claimant's complaints.  Further, her opinion[s] regarding absences, additional unscheduled breaks, and a need to elevate her legs are entirely unsupported by objective evidence of record." *Id.*

Contrary to the ALJ's finding, substantial evidence does not support her conclusion that Dr. Sanders relied heavily on Plaintiff's subjective complaints.  Instead, Dr. Sanders's treatment records reveal that she did not simply credit Plaintiff's subjective descriptions of her symptoms.  Rather, Dr. Sanders typically performed a physical examination before determining what tests (*e.g.*, blood tests, CAT scan, x-rays) to order, before diagnosing Plaintiff's health problems, and before making treatment decisions. (Doc. #6, *PageID* #s 524-41, 702, 704-18, 720-22, 1359-69, 1373-81, 1474-79). Additionally, the information Dr. Sadikov provided in the questionnaire identified observable objective findings such as joint tenderness and swelling.  Contrary to the ALJ's conclusion, Dr. Sadikov's treatment records around the time of her July 2015 questionnaire support her opinions.  The physical examination Dr. Sadikov performed in March 2015 revealed tenderness in Plaintiff's mid-back (T7-T10).  *Id.* at 702.  This supported Plaintiff's reports of back pain, and Dr. Sadikov noted that Plaintiff was positive for back pain, arthralgias, neck pain, and headaches.  As a result, Dr. Sadikov ordered an x-ray of Plaintiff's thoracic spine to rule out a compression fracture.  *Id.*

In May 2015, Plaintiff had musculoskeletal tenderness, including tenderness and spasm in her left trapezius.  *Id.* at 710.  Such evidence contravenes the ALJ's finding that Dr. Sanders did not base her opinions on objective findings.  The ALJ, moreover, failed to consider that Dr. Sanders had treated Plaintiff for 20 years.  This provided Dr. Sanders

with what the Regulations refer to as a "unique perspective [about] the medical evidence that cannot be obtained from the objective medical findings alone or reports from individual examinations …." 20 C.F.R. § 404.1527(c)(2). Given this and the length of time Dr. Sadikov had treated Plaintiff, the ALJ should not have overlooked this compelling factor when weighing her opinions. *Cf. Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990) ("A finding of substantial evidence must be 'based on the record as a whole' and must "take into account whatever in the record fairly detracts from its weight." (citations omitted)); *Brooks v. Comm'r of Social Sec.*, 531 F. App'x 636, 641 (6th Cir. 2013) ("a substantiality of evidence evaluation does not permit a selective reading of the record." (citations omitted)).

Next, although the ALJ correctly recited the legal standards applicable to weighing a treating physician's opinions, she erred by combining the treating physician rule with the regulator factors when weighing Dr. Sadikov's opinions. Rather than engaging in a meaningful exploration of the two-step evaluation procedure mandated by Regulation, the ALJ merely considered the "supportability" factor. This constitutes error because the "supportability" factor, along with the others listed in the regulations, *id.*, "are properly applied only *after* the ALJ has determined that a treating-source opinion will not be given controlling weight." *Gayheart,* 710 F.3d at 376 (emphasis added) (citation omitted). Indeed, "[t]he source of the opinion ... dictates the process by which the Commissioner accords it weight." *Id.* The ALJ's procedure ignored this. Instead, her use of the single factor of supportability leaves it uncertain (at best) whether she addressed, or even considered, the factors applicable to determining whether "controlling weight" was due

this treating physician's opinions.  This uncertainty conflicts with the requirement that

the ALJ's decision "must be sufficiently specific to make clear to any subsequent

reviewers the weight the adjudicator gave to the treating source's medical opinion and the

reasons for that weight."  Soc. Sec. R. 96-2p, 1996 WL 374188, at *5 (July 2, 1996).  As

the Sixth Circuit has explained:

> The requirement of reason-giving exists, in part, to let claimants understand
> the disposition of their cases, particularly in situations where a claimant
> knows that his physician has deemed him disabled and therefore might be
> especially bewildered when told by an administrative bureaucracy that she
> [sic] is not, unless some reason for the agency's decision is supplied.  The
> requirement also ensures that the ALJ applies the treating physician rule
> and permits meaningful review of the ALJ's application of the rule.

*Wilson*, 378 F.3d at 544 (internal quotation marks and citations omitted). Although the

Commissioner is correct to state that, in general, the Regulations did not require the ALJ

to provide "an exhaustive factor-by-factor analysis" of Dr. Sadikov's opinions, *Francis v.

Comm'r Soc. Sec. Admin.*, 414 F. App'x 802, 804 (6th Cir. 2011), the Regulations did

require the ALJ to provide "good reasons" for placing little weight on this treating

physician's opinions.  The ALJ did not meet this requirement and therefore failed to

apply the correct legal criteria to Dr. Sadikov's opinions.

Additionally, the ALJ's application of the supportability factor effectively

weighed Dr. Sadikov's opinions under the same legal criteria as she weighed the opinions

of the non-treating doctors.  This constituted error.  Again, "[t]he source of the opinion ...

dictates the process by which the Commissioner accords it weight."  *Gayheart*, 710 F.3d

at 376.

The ALJ did not realize or appreciate that both Dr. Sadikov and Dr. Simpson

found Plaintiff had limitations in her ability to maintain attention and concentration to perform even simple tasks and that she lacked capacity in her abilities to respond appropriately to work pressures in a work setting. (Doc. #6, *PageID* #s 615, 618). The fact that these medical sources formed their opinions within approximately two months of each other means they reached similar conclusions about Plaintiff's work limitations based on the same medical information. The ALJ failed to consider or appreciate this, thus slanting her review of these medical sources' opinions away from substantial supporting evidence. Indeed, "a substantiality of evidence evaluation does not permit a selective reading of the record.... Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Brooks*, 531 F. App'x at 641 (quoting, in part, *Garner v. Heckler,* 745 F.2d 383, 388 (6th Cir. 1984) (internal citations and quotation marks omitted)).

Similarly, the ALJ's evaluation of Dr. Simpson's opinions is self-conflicting. She credited Dr. Simpson's opinions about Plaintiff's intact capacity to appropriately respond to supervisors and coworkers. The ALJ reasoned that Dr. Simpson examined Plaintiff "in person and has specialized knowledge evaluating mental impairments. Further, her opinion is consistent with her examination and claimant's reported functioning…." (Doc. #6, *PageID* #77). Despite these weight-deserving attributes, the ALJ rejected Dr. Simpson's opinion regarding Plaintiff's inability to handle work pressure and her low capacity in concentration, persistence, and maintenance of pace. *Id*. And the ALJ consequently excluded from her assessment of Plaintiff's residual functional capacity any

work limitation related to these aspects of Dr. Simpson's opinions. *See id.* "Certainly, an ALJ is not required to mirror or parrot medical opinions verbatim. *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009). But where, as here, the ALJ assigns significant weight to a particular opinion and states it is consistent with the record, he [or she] must incorporate the opined limitations or provide an explanation for declining to do so." *Cooper v. Comm'r of Soc. Sec.*, 2:18cv67, 2018 WL 6287996, at *5 (S.D. Ohio 2018) (Vascura, M.J.), *Report & Recommendation adopted*, 2019 WL 95496 (S.D. Ohio 2019) (Smith, D.J.).

ALJ Sanders rejected Dr. Simpson's opinions about Plaintiff's limitations relating to work stress and the ability to concentrate by finding them "supported only by claimant's complaints and not by treatment notes or other objective measures such as neuropsychological testing results." (Doc. #6, *PageID* #77). This explanation is insufficient and lacks substantial supporting evidence. Dr. Simpson reported that she relied on "examination findings," not just Plaintiff's "complaints," as a basis for her opinion that that Plaintiff lacks the capacity to respond appropriately to work pressures. *Id.* at 615. Dr. Simpson spelled out her examination findings earlier in her report— notably observing that Plaintiff appeared anxious, displayed fidgetiness, cried when discussing her work difficulties, and maintained variable eye contact. *Id.* at 613. By ignoring these examination findings—or at best finding them insignificant—the ALJ substituted her own lay medical analysis of Plaintiff's anxiety-related symptoms in place of Dr. Simpson's. This constitutes error. "An ALJ 'may not substitute his own medical judgment for that of the treating physician where the opinion of the treating physician is

supported by the medical evidence.'" *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (quoting, in part, *Meece v. Barnhart,* 192 F. App'x 456, 465 (6th Cir. 2006) and citing *Rohan v. Chater,* 98 F.3d 966, 970 (7th Cir. 1996) (stating "ALJs must not succumb to the temptation to play doctor and make their own independent medical findings")) (other citation omitted).

Additionally, the ALJ's parsing from Dr. Simpson's opinions only the aspects that supported the her conclusions about Plaintiff's residual functional capacity reveal an ALJ searching the record for evidence that only supports her premature assessment of Plaintiff's residual functional capacity—premature because it appears the ALJ first framed Plaintiff's residual functional capacity then measured Dr. Simpson's opinions against it, rather than letting Dr. Simpson's opinions and other evidence inform her findings about Plaintiff's work limitations. *See Minor v. Comm'r of Soc. Sec.*, 513 F. App'x 417, 435 (6th Cir. 2013) ("Instead of performing a proper analysis of the medical evidence under agency regulations and controlling case law, the ALJ cherry-picked select portions of the medical record to discredit Minor's complaints of pain." (citing *Germany–Johnson v. Comm'r of Soc. Sec.,* 313 F. App'x 771, 777 (6th Cir. 2008) (noting the ALJ "was selective in parsing the various medical reports"); *Boulis–Gasche v. Comm'r of Soc. Sec.,* 451 F. App'x 488, 494 (6th Cir. 2011) (noting ALJ's conclusion was "grounded in a myopic reading of the record combined with a flawed view of mental illness")). The ALJ also indicates that she "included *limitations* in the residual functional capacity to accommodate for work-related *limitations* stemming from mental and cognitive impairments." (Doc. #6, *PageID* #76) (emphasis added). But there is only one mental-

work limitation in the ALJ's assessment of Plaintiff's residual functional capacity—he found that she "can perform simple 1-2 step tasks …." *Id.* at 66. This internal confusion does not inspire confidence in the ALJ's assessment of Plaintiff's residual functional capacity.

Moreover, the ALJ herself found Plaintiff moderately limited in concentrating, persisting, or maintaining pace, *id.* at 64, yet failed to even limit her to low-stress work and/or work with pace or quota restrictions. This constitutes error. *See Edwards v. Barnhart*, 383 F.Supp.2d 920, 930-31 (E.D. Mich. 2005) (hypothetical limiting claimant to "jobs entailing no more than simple, routine, unskilled work" not adequate to convey moderate limitation in ability to concentrate, persist, and keep pace. "Plaintiff may be unable to meet quotas, stay alert, or work at a consistent pace, even at a simple, unskilled, routine job."); *see also Whack v. Astrue*, No. 06-4917, 2008 WL 509210, at *8 (E.D. Pa. 2008) (citing cases for the proposition that hypothetical restrictions of "simple" or "low-stress" work do not sufficiently incorporate the claimant's medically established limitations where claimant has moderate deficiencies in concentration, persistence, or pace); *Varga v. Colvin*, 794 F.3d 809 (7th Cir. 2015). The ability to perform simple tasks differs from the ability to stay on task, as the Eleventh Circuit explains, "Other circuits have … rejected the argument that an ALJ generally accounts for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011) (joining the Third, Seventh, and Eighth Circuits) *See Mascio v. Comm'r of Soc. Sec.*, 780 F.3d 632, 638 (4th Cir. 2015) ("[T]he ability to perform simple tasks

differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace.").

Accordingly, for the above reasons, Plaintiff's Statement of Errors is well taken.

## VI.    Remand

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746. Remand may be warranted when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff lacks credibility, *see Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

Remand for an award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and the evidence of disability is not strong while contrary evidence is lacking. However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to sentence four of § 405(g) due to the problems discussed above. On remand, the ALJ should be directed to evaluate the evidence of record, including the medical source opinions, under the applicable legal criteria mandated by the Commissioner's Regulations and Rulings and by case law, and to evaluate Plaintiff's disability claim under the required analysis to determine anew whether Plaintiff was under a disability and whether her application for Supplemental Security Income should be granted.

## IT IS THEREFORE RECOMMENDED THAT:

1.     The Commissioner's non-disability finding be vacated;

2.     No finding be made as to whether Plaintiff Fondia K. Withrow was under a "disability" within the meaning of the Social Security Act;

3.     This matter be **REMANDED** to the Social Security Administration under sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Report and Recommendation, and any Decision adopting it; and

4.     The case be terminated on the Court's docket.


January 9, 2020                                    *s/Sharon L. Ovington*
                                                   Sharon L. Ovington
                                                   United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).